**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ERIC LEON CHRISTIAN,
*Defendant-Appellant*.

No. 12-10202

D.C. No.
2:09-cr-00303-
JCM-VCF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
September 9, 2013—San Francisco, California

Filed April 17, 2014

Before: Arthur L. Alarcón, Raymond C. Fisher,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher;
Partial Concurrence and Partial Dissent by Judge Alarcón

# SUMMARY*

## Criminal Law

The panel vacated a conviction for two counts of transmitting through interstate commerce email communications containing threats to injure the person of another, in a case in which the defendant argued that the district court should have allowed his expert, a psychologist who had earlier examined him for competency to stand trial, to testify regarding his diminished capacity defense, and that he was entitled to a jury instruction on diminished capacity even without such expert testimony.

The panel held that the district court abused its discretion by excluding the defendant's expert solely because he examined the defendant for competency rather than for diminished capacity. The panel wrote that instead of focusing exclusively on the different legal standards governing the conclusions the expert was asked to draw, the district court should have evaluated whether the substance of the expert's testimony would have helped the jury decide whether the defendant could form the specific intent to threaten the recipients of his emails. Although the record did not allow the panel to determine whether the expert's testimony should have been admitted, the panel held that the district court should not have excluded such testimony without conducting a voir dire or otherwise giving the expert an opportunity to explain how he could provide meaningful and relevant

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

testimony on diminished capacity from the competency evaluation he had conducted.

The panel further held that the rule requiring a new trial when a district court erroneously admits prejudicial expert testimony in a civil trial, *see Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 2014 WL 129884 (9th Cir. Jan. 15, 2014) (en banc), also applies to the erroneous exclusion of expert testimony from a criminal trial. The panel therefore vacated the defendant's conviction and remanded for a new trial.

The panel held that the district court acted within its discretion by denying the defendant's request for a diminished capacity instruction on this record.

Judge Alarcón concurred in part and dissented in part. He concurred in the majority's conclusion that the panel must reverse because of the trial judge's failure to permit defense counsel to conduct a voir dire examination of the defendant's expert, and agreed that *Barabin* should extend to the exclusion of expert testimony in criminal cases and compels a new trial in this case. He dissented from the majority's holding that the district court did not abuse its discretion by denying the defendant's request for a diminished capacity jury instruction.

**COUNSEL**

Jess R. Marchese (argued), Marchese Law Office, Las Vegas, Nevada, for Defendant-Appellant.

Peter S. Levitt (argued), Daniel G. Bogden, Robert L. Ellman, United States Attorney's Office for the District of Nevada, Las Vegas, Nevada; Elizabeth Olson White, Roger Yang, United States Attorney's Office for the District of Nevada, Reno, Nevada, for Plaintiff-Appellee.

---

**OPINION**

FISHER, Circuit Judge:

Eric Leon Christian appeals his conviction for two counts of transmitting through interstate commerce email communications containing threats to injure the person of another. He argues that the district court should have allowed his expert, a psychologist who had earlier examined him for competency to stand trial, to testify regarding his diminished capacity defense and that he was entitled to a jury instruction on diminished capacity even without such expert testimony.

We hold that the district court abused its discretion by excluding Christian's expert solely because he examined Christian for competency rather than for diminished capacity. Instead of focusing exclusively on the different legal standards governing the conclusions the expert was asked to draw, the district court should have evaluated whether the substance of the expert's testimony would have helped the jury decide whether Christian could form the specific intent to threaten the recipients of his emails. Although the record

does not allow us to determine whether the expert's testimony should have been admitted, the court should not have excluded such testimony without conducting a voir dire or otherwise giving the expert an opportunity to explain how he could provide meaningful and relevant testimony on diminished capacity from the competency evaluation he had conducted. We further hold that the rule requiring a new trial when a district court erroneously admits prejudicial expert testimony in a civil trial, *see Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 2014 WL 129884 (9th Cir. Jan. 15, 2014) (en banc), also applies to the erroneous exclusion of expert testimony from a criminal trial. We therefore vacate Christian's conviction and remand for a new trial.

Finally, we hold that the district court acted within its discretion by denying Christian's request for a diminished capacity instruction on this record. Accordingly, if no new evidence supporting a diminished capacity defense is admitted during Christian's new trial, the district court need not give a diminished capacity instruction.

## BACKGROUND

### A.

In May 2009, Christian emailed Joseph Forti, who was then the Chief of the North Las Vegas Police Department, to request police assistance retrieving his car, which had been repossessed several months earlier. Christian argued that the repossession was not valid and that he was still entitled to possess the car. When Forti responded that the department could not help him, Christian emailed a reply that included several threats of violence, stating: "I will have to kill to

retrieve my stolen and items [sic] if you do not retrieve them"; "I have assembled 100 armed angry men from Nevada who are ready for civil war if you stop me from protecting my civil rights"; "Get my fucking car or watch a terrorist car thief DIE!!!"; and "This communication is protected by the 1st Amendment and my undying dedication of ridding the earth of terrorist, [sic] who take away Constitutional Rights like YOU and the thief who has my car."

Christian also emailed threats to Michael Davidson, who at the time was the chief deputy city attorney and the chief prosecutor for North Las Vegas. Initially, Christian had requested copies of the case files for two cases, neither of which had been prosecuted by Davidson or by the city attorney's office. In a follow-up email, Christian demanded the case files and threatened to "get a mob together and start a civil war" to kill a state court judge or Davidson himself unless Davidson "g[o]t the Writ of Habeas Corpus out of the way."

After a two-day trial, a jury convicted Christian of two counts of transmitting through interstate commerce an email communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). The government's witnesses included Forti and Davidson, who both testified that they took the threats seriously and took steps to protect themselves and others they believed might be in danger of injury. Forti also testified that he believed the person who sent the email was "very disturbed."

Christian rested without testifying or presenting any evidence on his own behalf. He had sought to raise a diminished capacity defense, which allows a defendant to argue that he was incapable of forming the specific intent

required by the charged offense – in his case, the specific intent to threaten. *See United States v. Twine*, 853 F.2d 676, 678–80 (9th Cir. 1988). The district court precluded Christian's proffered expert witness from testifying about diminished capacity, however, and denied his request for a diminished capacity jury instruction. Christian's only remaining theory of defense was that the government had not proven that he had the specific intent to threaten when he sent the emails at issue.

**B.**

Before trial, Christian filed notice of his intent to call Dr. Charles Colosimo, a psychologist, as an expert witness. Dr. Colosimo had evaluated Christian's competency to stand trial during unrelated state court proceedings shortly after Christian sent the emails at issue. In an interview that lasted approximately one hour, Dr. Colosimo followed an outline "designed to assess core procedural competencies" by probing 13 "areas of functioning" related to an individual's ability to assist in his defense.[1] Christian was reportedly hostile and uncooperative throughout the interview. Dr. Colosimo found Christian's competence level to be inadequate in all 13 areas and concluded that Christian could

---

[1] Specifically, these areas were: ability to appraise the available legal defenses; level of unmanageable behavior; quality of relating to his attorney; ability to plan legal strategy; ability to understand the roles of various participants in courtroom proceedings; understanding of court procedure; appreciation of the charges; appreciation of the range and nature of possible penalties; ability to appraise the likely outcomes; capacity to disclose to the attorney available pertinent facts surrounding the offense; capacity to realistically challenge the prosecution witnesses; capacity to testify relevantly; and manifestation of self-serving rather than self-defeating motivation.

not communicate relevant information to his attorney, make rational decisions about plea bargaining, consider a mental illness defense, behave appropriately in the courtroom, make reasonable defensive decisions or seek the best possible outcome from his trial.

Dr. Colosimo also diagnosed Christian with psychosis, not otherwise specified, probably delusional or paranoid; personality disorder, not otherwise specified; and probable learning disabilities, not otherwise specified. He considered Christian to be at high risk for homicidal behaviors, and recommended that he be transferred to another facility for therapeutic care and medication management.

After the close of the government's case, defense counsel informed the district court that he intended to call Dr. Colosimo to testify regarding Christian's diminished capacity defense. Although the court was not inclined to let Dr. Colosimo testify because he had examined Christian for competency, not for diminished capacity, it deferred ruling on the issue until the following morning to allow counsel to consult Dr. Colosimo and learn "what he has to say, if anything, about diminished capacity."

The next morning, counsel represented that Dr. Colosimo had said the evaluations for competency and for diminished capacity were "pretty much one and the same." The district court asserted that Dr. Colosimo was incorrect because different legal standards govern competency, which requires a defendant to have "sufficient present ability to consult with his lawyer" and "a factual understanding of the proceedings before him," and diminished capacity, which concerns "whether the defendant has the ability to attain the culpable state of mind which defines the crime." For this reason, the

court did not allow Dr. Colosimo to testify. The court also ruled that, without Dr. Colosimo's testimony, there was not sufficient evidence to support giving a jury instruction on diminished capacity.

## STANDARD OF REVIEW

We review for an abuse of discretion the district court's exclusion of expert testimony and its refusal to give a jury instruction based on insufficient evidentiary support. *See United States v. Espinoza-Baza*, 647 F.3d 1182, 1191 (9th Cir. 2011); *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007). Under an abuse of discretion standard, we are required first "to consider whether the district court identified the correct legal standard for decision of the issue before it" and then "to determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

The government argues that plain error review applies to both issues because Christian offered different reasons supporting the diminished capacity jury instruction at trial than he does on appeal and because his offer of proof for Dr. Colosimo's testimony was inadequate. *See United States v. Bishop*, 291 F.3d 1100, 1113 (9th Cir. 2002); *United States v. Varela*, 993 F.2d 686, 688 (9th Cir. 1993). We disagree. Christian argued below, as he does on appeal, that a diminished capacity jury instruction was supported by the evidence at trial. Moreover, although counsel's offer of proof was inartful, the district court deemed it sufficient to make a decision and it adequately preserved the evidentiary issue for

appeal. *See Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995) ("A proper offer of proof informs the trial court of what counsel expects to prove by the excluded evidence and preserves the record so that an appellate court can review the trial court's decision for reversible error."). We also note that the district court several times interrupted defense counsel's attempt to make a more complete offer of proof. By the time counsel was allowed to make any sort of record, the district court had already precluded Dr. Colosimo's testimony. *See R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 272 n.2 (9th Cir. 1991) ("Failure to make an offer of proof . . . is excused if an offer of proof would have been redundant, unnecessary, *or futile*." (emphasis added)).

## DISCUSSION

### A.  Expert Testimony

Christian's primary argument on appeal is that the district court abused its discretion by refusing to let him introduce expert testimony from Dr. Colosimo in support of his diminished capacity defense. The admissibility of expert testimony is generally governed by Federal Rule of Evidence 702, which requires district courts to "perform a gatekeeping function to ensure that the expert's proffered testimony is both reliable and relevant." *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). The district court's exclusion of Dr. Colosimo's testimony implicitly rested on a relevancy determination: because Dr. Colosimo examined Christian for competency, not for diminished capacity, the court concluded that his testimony was not relevant to Christian's diminished capacity defense. We hold that the district court abused its discretion by precluding Dr. Colosimo's testimony on this basis because it applied an

erroneous legal standard. Instead of focusing exclusively on the different legal standards governing the ultimate conclusions Dr. Colosimo was asked to draw, the court should have determined whether testimony regarding his observations and diagnoses of Christian during the competency interview would have been relevant and helpful to the jury in evaluating Christian's diminished capacity defense.

We have explained that a district court deciding whether to admit expert testimony should evaluate whether that *testimony* "will assist the trier of fact in drawing its own conclusion as to a 'fact in issue'" and should not limit its consideration to "the existence or strength of an expert's *opinion*." *United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993) (emphasis in original). In *Rahm*, the defendant was charged with possession of counterfeit currency and attempting to pass counterfeit currency; her only defense was that she did not know the currency was counterfeit. *See id.* at 1408–09. The district court excluded the testimony of an expert who had examined Rahm for perceptual difficulties, in part because the expert did not conclusively opine that Rahm could not recognize counterfeit currency. *See id.* at 1410–11. We reversed, holding that the court should have evaluated "the test results and the perceptual difficulties they demonstrate . . . in determining admissibility" instead of "focus[ing] exclusively upon the proffered expert's opinion." *Id.* at 1412.

The district court in this case similarly focused exclusively on Dr. Colosimo's expert *opinions* rather than his proposed expert *testimony*. Specifically, the court focused on the different legal standards governing the ultimate issues on which Dr. Colosimo had been asked to opine: whether

Christian was competent to stand trial and whether Christian lacked the capacity to form the specific intent to threaten. *Compare Twine*, 853 F.2d at 678 (holding that diminished capacity concerns "whether the defendant possessed the ability to attain the culpable state of mind which defines the crime"), *with Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (defining the competency standard as whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him"). The court thereby overlooked "the psychological test results underlying the opinion." *Rahm*, 993 F.2d at 1412. Just as the district court in *Rahm* should have evaluated the "test results and the perceptual difficulties they demonstrate," *id.*, the district court in this case should have considered whether Dr. Colosimo's psychological evaluation of Christian would have been relevant and helpful to the jury in deciding whether Christian had the capacity to form the specific intent to threaten when he sent the emails at issue.

Accordingly, the correct legal standard requires the court to determine the relevance of the *psychological* evaluation the expert conducted and the *medical* diagnoses he made, not his ultimate *legal* conclusion regarding the defendant's mental state. The district court overlooked this distinction when it asserted that Dr. Colosimo was wrong to say he would have used the same methods to evaluate Christian for diminished capacity as he had for competency. Dr. Colosimo had not opined that the *legal* standards for diminished capacity and competency were the same, but that, as a doctor, he would have conducted the same *evaluation* and gathered the same *psychological information*. That Dr. Colosimo initially used the results of the evaluation to formulate an opinion about

competency does not mean he could not have used the same results to formulate an opinion about diminished capacity.

In fact, Dr. Colosimo could not have explicitly testified that Christian lacked the capacity to form the specific intent to threaten. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."); *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997) (en banc) (holding that Rule 704(b) prohibits an expert witness in a criminal case from "stat[ing] an opinion or draw[ing] an inference which would necessarily compel the conclusion" that the defendant lacked the requisite mental state).[2]  In *Rahm*, we pointed out that "[i]t would make little

---

[2] We acknowledge that Rule 704(b) would have *limited* the scope of Dr. Colosimo's testimony, but we reject the government's argument that the rule would have *prohibited* him from testifying at all.  The government's argument rests entirely on the description of Dr. Colosimo's proposed testimony in Christian's brief as being that Christian "did not have the ability or capacity to understand that his subject emails would be perceived as a real or actual threat of bodily harm."  Although the government is correct that Rule 704(b) would have prohibited Dr. Colosimo from offering that precise opinion, the rule "allows expert testimony on a defendant's mental state so long as the expert does not draw the ultimate inference or conclusion for the jury." *United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002); *see also Morales*, 108 F.3d at 1033 (holding that an expert may "give an opinion on a predicate matter from which a jury might infer the defendant's required *mens rea*"). Testimony regarding Dr. Colosimo's diagnoses and the results of the psychological evaluation Dr. Colosimo gave Christian should not run afoul of this restriction. *See Finley*, 301 F.3d at 1015 (holding that expert testimony regarding the defendant's "atypical belief system" did not violate Rule 704(b)'s prohibition because "[t]he jury was free to conclude that [the defendant] knew the notes were fraudulent, despite the rigidity of his belief system").

sense to require a conclusive opinion in determining admissibility, and then absolutely to forbid expression of the opinion in testimony." 993 F.2d at 1411 n.3. So too here. Because Dr. Colosimo could not have properly testified that Christian lacked the capacity to form the requisite specific intent to threaten, the absence of an opinion to that effect in his report is not a valid reason to preclude his testimony. Particularly under these circumstances, focusing on the expert's evaluation rather than his ultimate conclusion makes perfect sense.

Dr. Colosimo's report reveals that portions of his competency evaluation were probably relevant to Christian's diminished capacity defense. For example, Dr. Colosimo diagnosed Christian with psychosis, including probable delusions, and borderline personality disorder. Testimony regarding the behavior Christian exhibited that led Dr. Colosimo to make these diagnoses and the likely effects of these conditions may well have been helpful to the jury in deciding whether Christian could form the requisite intent to threaten. Additionally, a few of the "areas of functioning" that Dr. Colosimo probed during the competency evaluation relate to a diminished capacity determination. In particular, Christian's ability to appraise the likely outcomes of his actions would bear on his ability to understand whether the recipients of his emails would perceive them as threats.

We do not hold that Dr. Colosimo's testimony must be admitted, however, only that there were sufficient indicia of relevance in defense counsel's proffer and in Dr. Colosimo's expert report to warrant giving Dr. Colosimo an opportunity to explain how the psychological information he gathered during Christian's competency evaluation was relevant to a diminished capacity defense. Defense counsel requested an

opportunity "to lay the proper foundation" by putting Dr. Colosimo on the stand and asking how the competency evaluation he conducted would bear on the issue of diminished capacity. The district court should have explored the relevance of Dr. Colosimo's testimony by allowing defense counsel an opportunity to conduct a voir dire of Dr. Colosimo. *See United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) (explaining that the most desirable method for an offer of proof is conducting a voir dire of the expert and the least desirable is asking counsel what the proffered testimony would be).

Finally, the district court's error was not harmless because it "prevent[ed] the defendant from providing an evidentiary basis for his defense." *United States v. Saenz*, 179 F.3d 686, 689 (9th Cir. 1999). Christian's only defense to the charged offenses was that he did not have the requisite intent to threaten. Expert testimony supporting the inference that he was not capable of forming such intent would have bolstered his argument and entitled him to a diminished capacity jury instruction. As we explain in Part B, *infra*, Christian's erratic behavior already supports the inference that he suffered some sort of mental illness; evidence of a link between that illness and his capacity to form a specific intent to threaten, even slight, would have provided an evidentiary basis for his requested jury instruction. Although the record does not reveal the precise content of Dr. Colosimo's testimony, it *does* indicate that, if his testimony had been admitted, he likely would have provided some evidentiary basis for inferring such a link between Christian's obvious mental illness and Christian's sole defense. Under these circumstances, we have no difficulty concluding that Christian's substantial rights were affected by the district court's error. *See* Fed. R. Evid. 103(a).

Having concluded that the district court abused its discretion and that its error was not harmless, we must determine the appropriate remedy. We recently held in *Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 2014 WL 129884 (9th Cir. Jan. 15, 2014) (en banc), that when "the erroneous admission of evidence actually prejudiced the defendant, such that the error was not harmless, the appropriate remedy is a new trial." *Id.* at *1, *7. Under *Barabin*, a new trial is warranted when evidence admitted through an erroneous analysis prejudices the opposing party but the record is too sparse to conduct a proper admissibility analysis and decide whether the admission itself was erroneous. *See id.* at *7; *id.* at *9–10 (Nguyen, J., concurring in part and dissenting in part).[3]

---

[3] We emphasize that neither *Barabin* nor this decision requires a new trial *whenever* a district court errs in analyzing the admissibility of expert testimony. *Barabin* affirmed *Mukhtar v. California State University*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003), only to the extent it held "that an erroneous admission of expert testimony, absent a showing the error was harmless, requires a new trial." *Barabin*, 2014 WL 129884, at *7; *see also id.* (assuming that "a limited remand is available post-*Mukhtar*," but declining to remand where "the evidence *was* prejudicial" (emphasis added)); *id.* at *7 (Nguyen, concurring in part and dissenting in part) (noting that the *Barabin* majority "open[ed] the door to a limited remand . . . by overruling *Mukhtar*"). In this case, as in *Barabin*, the record amply demonstrates that the district court's error was *prejudicial* even though the record is not sufficient to determine whether the evidence at issue was *admissible*. *See supra* at 15–16; *Barabin*, 2014 WL 129884, at *5. Under different circumstances, however, a limited remand remains available. For example, if the record did not permit us to ascertain that "severe prejudice" resulted from the district court's evidentiary determination, *id.* at *8, perhaps because the district court excluded such evidence without obtaining an adequate proffer or conducting an adequate voir dire, a limited remand on the question of *prejudice*, rather than admissibility, would be appropriate.

Although *Barabin* involved the *admission* of expert testimony in a *civil* trial and this case involves the *exclusion* of expert testimony from a *criminal* trial, we hold that *Barabin*'s analysis applies with equal force to these circumstances. *Barabin* extended a general evidentiary rule requiring a new trial "[w]hen the district court has erroneously admitted or excluded prejudicial evidence" to the admission of expert testimony. *Id.* at *6. Nothing in the analysis suggests that the general rule, which encompasses the exclusion of non-expert evidence, should not also extend to the exclusion of expert testimony. We also see no reason that the rule announced in *Barabin* should not apply to criminal cases. The same rules of evidence, including Rule 702, govern both civil and criminal proceedings. *See* Fed. R. Evid. 1101(b); *United States v. Webb*, 115 F.3d 711, 716 (9th Cir. 1997) (Jenkins, J., concurring in the result), *abrogated on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). It follows that the remedies for violations of those evidentiary rules generally should also be consistent across civil and criminal cases.[4]

Accordingly, because the district court erred when it excluded Dr. Colosimo's expert testimony and that exclusion prejudiced the defendant, but "the record before us is too

---

[4] We recognize that *Barabin* distinguished two criminal cases, *United States v. Cordoba*, 104 F.3d 225 (9th Cir. 1997), and *United States v. Amador-Galvan*, 9 F.3d 1414 (9th Cir. 1993), in which the court vacated the conviction and remanded for an evidentiary hearing, but allowed the district court to reinstate the conviction if it reached the same conclusion under the proper standard. *See Barabin*, 2014 WL 129884, at *7; *Cordoba*, 104 F.3d at 229; *Amador-Galvan*, 9 F.3d at 1418. The material distinction was not that they were criminal cases, however, but that they were initial attempts to "grappl[e] with the effects of *Daubert*" that were impliedly overruled "[a]fter the dust of *Daubert* had settled." *Id.* at *7.

sparse to determine whether the expert testimony is relevant and reliable," we vacate Christian's conviction and remand for a new trial. *Barabin*, 2014 WL 129884, at \*7.

## B.  Jury Instruction

Christian also argues that, even without Dr. Colosimo's testimony, the district court abused its discretion by refusing to give a jury instruction on his diminished capacity defense. It is "well established that a criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir. 1988). The defendant need not introduce his own evidence to be entitled to a jury instruction on his theory of defense if there is "some foundation" for the defense in the government's evidence. *See United States v. Bello-Bahena*, 411 F.3d 1083, 1090–91 (9th Cir. 2005). When there is some foundation in the evidence for the defendant's theory of defense, the denial of an instruction regarding that defense warrants per se reversal. *See id.* at 1091 n.6.

We hold that the district court did not abuse its discretion by denying Christian's request for a diminished capacity jury instruction on this record, because there was not a sufficient foundation for the instruction in the evidence presented at trial. Christian argues that the inherent irrationality of the threats themselves, which he characterizes as "the utterances of an irrational, even lunatic, mind," is sufficient to warrant a diminished capacity instruction. Additionally, as the dissent points out, former Chief of Police Forti testified that

he believed the person who sent such threats was very upset and "very disturbed."  Dissent at 21.

Although a jury could reasonably infer from this evidence that Christian suffered from some form of mental illness, his argument fails because such evidence, standing alone, is not sufficient to require a diminished capacity instruction.  The diminished capacity defense is not cognizable simply because a criminal defendant may be mentally ill; instead, the defense "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime."  *Twine*, 853 F.2d at 678.  A jury instruction was required only if there was *some* evidence supporting a link between Christian's mental illness and his ability to form a specific intent to threaten, though that evidence may be "weak, insufficient, inconsistent, or of doubtful credibility." *See United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987).  Christian sought to present evidence of that link through Dr. Colosimo's testimony, which the district court erroneously excluded as discussed in Part A, *supra*.  Absent that crucial evidence, we respectfully disagree with the dissent that the jury was entitled to infer that Christian could not form the requisite intent to threaten.

If any evidence, expert or otherwise, supporting a link between Christian's mental illness and his ability to form the intent to threaten is presented during the new trial, the district court must give the jury a diminished capacity instruction. Because no such evidence was introduced at the original trial, it was within the district court's discretion to deny Christian's request for a diminished capacity jury instruction on that record.  Assuming, however, that the district court (after voir dire under the proper legal standard) admits Dr. Colosimo's

testimony, there would likely be sufficient evidence to support such an instruction.

## CONCLUSION

We hold that the district court abused its discretion by focusing exclusively on the different legal standards for competency and diminished capacity without considering whether Dr. Colosimo's testimony would have helped the jury assess Christian's diminished capacity defense. We therefore vacate Christian's conviction and remand for a new trial.

**VACATED and REMANDED.**

---

ALARCÓN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion in Part A that we must reverse because of the trial judge's failure to permit defense counsel to conduct a *voir dire* examination of Dr. Colosimo. His expert testimony may be sufficient to support a jury's finding that Christian lacks the capacity to form a specific intent to threaten another. I also agree that *Barabin v. AstenJohnson, Inc.*, — F.3d —, 2014 WL 129884 (9th Cir. Jan. 15, 2014) (en banc), should extend to the exclusion of expert testimony in criminal cases and compels a new trial in this case. I respectfully dissent from the majority's holding in Part B that the district court did not abuse its discretion by

denying Christian's request for a diminished capacity jury instruction on the record before it.

I agree with the majority that a criminal defendant is entitled to have a jury instruction on any theory that provides a legal defense to the charge against him if there is some support in the record for that defense, and that this is so even when the evidentiary foundation for the defendant's defense rests solely in the government's evidence. Maj. Op. at 18 (citing *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir. 1988); *United States v. Bello-Bahena*, 411 F.3d 1083, 1090–91 (9th Cir. 2005)). I further recognize that this Court has held that "a mere scintilla of evidence supporting the defendant's theory is not sufficient to warrant a defense instruction." *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006) (emphasis added) (internal quotation marks omitted). As the majority opinion notes, however, we have also previously held that "a criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, *insufficient*, inconsistent, or of doubtful credibility." Maj. Op. at 18 (emphasis added) (quoting *Yarbrough*, 852 F.2d at 1541).

In an email to Joseph Forti, the Chief of Police of the North Las Vegas Police Department, Christian asserted that he had "assembled 100 armed angry men from Nevada who are ready for civil war if you stop me from protecting my civil rights"; "Get my fucking car or watch a terrorist car thief DIE!!!" Chief Forti testified that Christian was "very disturbed." The majority concedes that "Christian's erratic behavior . . . supports the inference that he suffered some sort of mental illness." Maj. Op. at 15. The jury should have

been permitted to determine whether they could infer from this evidence of Christian's mental condition whether his capacity to threaten others was diminished.

"A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case . . . ." *United States v. Marguet–Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (internal quotation marks omitted). We held in *United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988), that "a criminal defendant is entitled to have a jury instructed on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *Id.* at 1541.

While conceding that the evidence is sufficient to show that Christian suffers from some sort of mental illness, the majority has inferred that this evidence is insufficient to demonstrate diminished capacity. The failure to instruct the jury on the defense of diminished capacity prevented the jury from determining whether the circumstantial evidence of Christian's mental illness was sufficient or insufficient to persuade it that Christian lacked the capacity to form the intent to threaten others.

A district court's "failure to instruct the jury on the defendant's theory of the case, where there is evidence to support such instruction, is reversible per se and can never be considered harmless error." *United States v. Zuniga*, 6 F.3d 569, 571 (9th Cir. 1993). On this record, I would hold that the district court's refusal to instruct the jury on Christian's theory of the case is reversible per se.