**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 18 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff-Appellee,<br><br> v.<br><br>STEVEN EUGENE FORD, AKA Job Ford,<br>AKA Eleazar Melchizedek,<br><br>   Defendant-Appellant. | No. 17-10061<br><br>D.C. No.<br>3:16-cr-00016-HDM-WGC-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Submitted March 12, 2018[**]
San Francisco, California

Before:  PAEZ and IKUTA, Circuit Judges, and VITALIANO,[***] District Judge.

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]  The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

Defendant-appellant Steven Eugene Ford appeals his conviction for making a threat to take the life of the President of the United States in violation of 18 U.S.C. § 871(a). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

In reviewing a challenge to the sufficiency of the evidence supporting a conviction for making a verbal threat, where there is substantial evidence to support the verdict, as is the case here, we "[d]efer[] to the jury's findings on historical facts, credibility determinations, and elements of statutory liability," and we then independently examine the record de novo "to determine whether the facts as found by the jury establish" a constitutional "true threat." *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002). To be deemed a "true threat," for constitutional purposes, the speaker must have communicated the threatening words with a subjective and objective intent to threaten. *United States v. Bagdasarian*, 652 F.3d 1113, 1117-18 (9th Cir. 2011).

The record leaves no doubt that Ford telephoned the White House in the middle of the night and said to the White House telephone operator "I'm going to kill that president." The thrust of Ford's defense was that, because of mental illness and the influence of alcohol, he could not, and did not, have the intent necessary to make a "true threat."

We conclude that Ford possessed the constitutionally required subjective intent "to communicate a serious expression of an intent to commit" the threatened

2

act. *Virginia v. Black*, 538 U.S. 343, 359 (2003). While there is evidence in the record that Ford was diagnosed as psychotic at the Veterans Administration hospital two days after he made the call, there is no evidence that he was suffering from any such condition or episode when he made the call. Similarly, although Ford's residence was messy and littered with alcohol bottles, there was only scant evidence that Ford had been drinking prior to calling the White House. As to the call itself, the phone operator who received the call testified that Ford "was rather clear, angry" and while he "spoke rapidly," he was not "rambling." *See United States v. Christian*, 749 F.3d 806, 815 (9th Cir. 2014).

Furthermore, Ford's statement was objectively a threat under the circumstances. Despite his, at times, nonsensical ranting, a person listening to his phone call could reasonably have interpreted his statement, "I'm going to kill that president," to mean exactly what the words say, as a threat to kill the President. *See Bagdasarian*, 652 F.3d at 1119. The phone operator testified that she recorded Ford's words on a threat form, and, although she described the communication as irrational, she still treated it as serious enough to merit careful notetaking and transfer to the Secret Service. *See United States v. Mitchell*, 812 F.2d 1250, 1256 (9th Cir. 1987), *overruled on other grounds by Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1068-70 (9th Cir. 2002) (en banc). In addition, notwithstanding that Ford was in Reno

3

when he made the threats, a reasonable person could still have perceived them to be real because Ford did not say that he would kill the President that night, nor did he provide any details that would render the threat objectively impossible.  Finally, the record evidence does not suggest that there was any political speech or purpose other than to threaten the life of President Obama.  Upon de novo review, we conclude that the verdict is not out of harmony with the First Amendment.  *See Watts v. United States*, 394 U.S. 705, 707-08 (1969) (per curiam).

      **AFFIRMED.**