**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

MAY 7 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:   THOMAS BRYON CATTELL<br><br>           Debtor<br>_____<br><br><br>THOMAS BRYON CATTELL,<br><br>           Appellant.<br><br>   v.<br><br>VICTORIA DEEKS; CONNOR DEEKS; GARRETT WELCH,<br><br>           Appellees. | No. 24-2857<br><br>D.C. No.<br>22-1214<br><br>MEMORANDUM[*] |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Gary A. Spraker, William J. Lafferty, III, and Julia W. Brand, Bankruptcy Judges,
Presiding

Argued and Submitted April 1, 2025
Portland, Oregon

Before: BYBEE, LEE, and FORREST, Circuit Judges.
Concurrence by Judge LEE.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Thomas Cattell's consolidated adversary proceeding appeared ready to go to trial in bankruptcy court in December 2021. *See In re Thomas Bryon Cattell*, No. 19-03123-dwh (Bankr. D. Or.). But in the months leading up to trial, Cattell's trial counsel withdrew after failing to file a response to a summary judgment motion. Cattell told the bankruptcy court that he contacted at least four other attorneys, each of whom declined to represent him because they were "too busy." Finally, eleven days before trial, Cattell secured new counsel in Jesse London, who made a special appearance on November 26, 2021, to request the trial be continued for two to three months so that he could get up to speed.

London explained that he agreed to represent Cattell at trial. But due to prior commitments, including a planned vacation and several other trials in December and January, his representation of Cattell was "necessarily contingent" on having a continuance from December 7, 2021, to February or early March. Otherwise, Cattell would have to proceed to trial without an attorney.

In a puzzling decision, the bankruptcy court denied the continuance. Weighing the factors in *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985), the court ruled that the inconvenience to defendants of having to re-serve witnesses and re-schedule time off work outweighed the benefit of Cattell having a lawyer to try the case, even though the trial was scheduled for non-consecutive days and over Zoom. The court also determined that Cattell did not exercise diligence by

contacting four attorneys over four months. Predictably, Cattell had trouble presenting his case *pro se*, and the trial took nearly three times longer than expected.

Following an unsuccessful appeal to the Bankruptcy Appellate Panel (BAP), Cattell challenges the bankruptcy court's decision to deny the continuance. Cattell also challenges a number of other procedural and substantive rulings. We assume the parties' familiarity with the remaining facts and do not recite them here. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

\* \* \*

1. Motion to Continue. We review the decision to grant or deny a continuance for "clear abuse of . . . discretion," applying the factors outlined in *Flynt*. *Bearchild v. Cobban*, 947 F.3d 1130, 1138 (9th Cir. 2020). Although we may assign any weight to these factors, "prejudice resulting from the denial . . . is required before error will be assigned to the failure to grant a continuance." *Id.*

Cattell falls short of showing prejudice. He has not pointed to any evidence that he was not able to present. *See United States v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985). And having to proceed *pro se* in a civil trial is not inherently prejudicial. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986); *see also Ungar v. Sarafite*, 376 U.S. 575 (1964). While Cattell's presentation may have been affected, his manner and credibility were not of particular importance in this trial to the bankruptcy court. *Cf. United States v.*

*Kloehn*, 620 F.3d 1122, 1129 (9th Cir. 2010); *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995). Indeed, bankruptcy trials tend to be more informal, and the court gave Cattell plenty of accommodation in the length and format of his presentation, finding that he ultimately "had an ability to say the things [he] wanted to say." Therefore, though we are sympathetic to the difficulties Cattell faced at trial, we decline to find a clear abuse of the court's broad discretion to deny the continuance. *See Flynt*, 756 F.2d at 1358.

2. Financial Abuse. Cattell argues for relief under Oregon Revised Statutes (ORS) § 124.100(2), which prohibits financial abuse of a vulnerable person.[1] But Cattell is not able to establish the required elements of this claim. First, he is not a "vulnerable person" as defined by § 124.100(1)(e): Cattell is not "financially incapable" because he has been able to own businesses, buy properties, and use financial accounting software to produce financial statements in the form of spreadsheets, and he is not a "person with a disability" as defined by § 124.100(1)(d) because he has not shown an inability to perform "substantially all the ordinary duties of occupations" that a neurotypical person with similar training and experience could perform. Second, Cattell has not established that he suffered

---

[1] "A vulnerable person who suffers injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse." ORS § 124.100(2).

"financial abuse" under ORS § 124.110(1) sufficient to overcome the bankruptcy court's finding that no such abuse occurred. *See In re Cattell*, 2022 WL 6797579, at *9 (Bankr. D. Or. Oct. 11, 2022).

3. Fraudulent Transfer. Cattell argues that the bankruptcy court should have analyzed his fraudulent transfer claim under the partnership avoidance powers in ORS § 67.095(2). But this claim—which hinges on the allegation that Garrett Welch knew the Skyliner property "was partnership property and that Deeks lacked authority to bind the partnership"—is nowhere to be found in Cattell's Second Amended Complaint. The complaint alleges that Welch "had knowledge that his title might be affected by the Cattel [sic] and Deeks dispute." It does not mention knowledge of the partnership or of Deeks' authority to bind it. Therefore, the complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and it is thus insufficient. *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000) (quoting FED. R. CIV. P. 8(a)). As for the question of trial by consent, the evidence Cattell adduced at trial both was "also relevant to the other issues at trial" and "only inferentially supports [his] unpleaded claim," *In re Acequia, Inc.*, 34 F.3d 800, 814 (9th Cir. 1994); *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 506 (9th Cir. 1987), rendering amendment under Federal Rule of Civil Procedure 15(b) unavailable.

4. Remaining Motions. Cattell alleges error with respect to other motions that

he made before or during the trial.  Each challenge is unavailing.

For his oral motion for a new trial on January 24, 2022, Cattell has not shown a "manifest error of law, manifest error of fact, [or] newly discovered evidence" as required under Federal Rule of Civil Procedure 59(a)(2).  *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).  As to the motion for a protective order on February 8, 2022, Cattell admits that any potential error was harmless.  *See Boyd v. City & County of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009).  As to the motion for a stay pending appeal on December 6, 2021, this issue is moot.  And for Cattell's remaining challenges to matters of discovery, evidence, and case management, none of these decisions by the bankruptcy court amounted to an abuse of discretion.  *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017).

**AFFIRMED.**

*Cattell v. Deeks et al.*, Case No. 24-2857

LEE, Circuit Judge, concurring:

After his attorney failed to respond to a summary judgment motion and then withdrew from the case only a few months from trial, Thomas Cattell repeatedly searched for new trial counsel. He finally found one, but his new lawyer said he needed two months to prepare for trial and tend to his other commitments. As the panel put it in the memorandum disposition, the bankruptcy court's refusal to grant this continuance—and thus force Cattell to try his case *pro se*—was "puzzling." But it is more than that—it is troubling. We as judges need to do better not to act arbitrarily, even if Cattell ultimately did not suffer sufficient prejudice to merit a reversal here.

The U.S. legal system is the envy of the world. But it is mystifying for most people. And for obvious reasons: Our legal system has esoteric rules, technical terms, and legions of requirements. These rules are both a strength and a weakness of our system. They help establish the rule of law, but they can also ensnare inexperienced parties. While the Constitution does not guarantee a right to counsel for civil litigants, courts should be mindful that lay parties benefit from having lawyers—especially for trials.

Yet for inexplicable reasons, the bankruptcy judge refused to grant a mere two-month continuance in this case. Three of the four *Flynt* factors favored

1

continuing the trial. *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985). Cattell was fairly diligent in trying to get specialized counsel after his prior counsel withdrew after apparently committing malpractice. *See United States v. Pope*, 841 F.2d 954, 956 (9th Cir. 1988). Cattell's new counsel reasonably asked that the trial date be continued to February 2022 so he could get up to speed (and, in any event, the trial set for December would have likely extended into the new year, given the holiday season). Importantly, there was no hint of gamesmanship on Cattell's part—he was a hapless victim of his prior counsel's negligence. The alternative to a two-month continuance was to deprive Cattell of an attorney for a trial.

Somehow, the bankruptcy court concluded that all these factors were outweighed by the inconvenience to the opposing parties. Victoria Deeks stated that she would have "difficulties . . . scheduling similar time off" work as a nurse, and Garrett Welch would have to re-serve his witnesses, if any. But these issues are not "substantial." Any continuance is inconvenient to a degree: A witness has to re-schedule and show up, but that is just a part of litigation. It matters even less when the trial is on Zoom. The bankruptcy court could tell from the hearing on the motion to continue that explaining the procedures of trial to Cattell and giving him extra leeway to present was likely to incur *more* time than just delaying the trial—which is exactly what happened.

As a result of the denial, Cattell struggled mightily to present his case. He

2

repeatedly brought evidence into his arguments and arguments into his presentation of evidence. He claimed to have "noise" or "white noise" in his head. He was emotional when talking about Connor and Victoria Deeks—key players in the trial. He asked for an attorney at least ten times. At one point, Cattell called a statement by the Welches "fruitcakes. I know that's not a legal term[, but] I don't know what to say." While Cattell fails to show actual prejudice, it is clear that he had trouble trying this case.

An old adage says that someone who represents himself has a fool for a client. Trying a case pro se can be like walking a labyrinth without a map. The path for Cattell was legally open, but his trial was fraught with traps and rules that led him astray. Ultimately, the bankruptcy court's baffling refusal to grant the continuance may not have been the reason Cattell lost. But if courts act arbitrarily, people lose trust in the rule of law—and our judicial system is the loser.